In the Matter of EASTMET CORP., Debtor.

Suzanne MENSH, Appellant,

v.

EASTERN STAINLESS CORP., Appellee.

Civ. A. No. HAR 89–1760.

United States District Court, D. Maryland.

Oct. 24, 1989.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Currently pending before this Court is the appeal of Suzanne Mensh ("Appellant"), Clerk of the Circuit Court for Baltimore County, from the opinion of the United States Bankruptcy Court for the District of Maryland (James F. Schneider, Judge). The issues have been fully briefed. No hearing is deemed necessary. Local Rule 105.6 (D.Md.1989).

### FACTS

On July 29, 1988, Eastern Stainless Corp. ("ESC") acquired assets from the Eastern Stainless Steel Division of Eastmet ("Eastmet"), the Debtor in the proceeding Chapter 11 bankruptcy case. Included in this transfer of assets was real property located at 7700 Rolling Mill Road, Baltimore County, Maryland ("Rolling Mill"). As part of the court-confirmed reorganization plan, ESC financed this purchase by means of a loan from Pittsburgh National Bank and BT Commercial Corporation in the amount of $15,000,000. To secure the loan, ESC executed a Purchase Money Deed of Trust on the Rolling Mill property.

When the Purchase Money Deed of Trust was submitted for recording, the Clerk's Office of the Circuit Court for Baltimore County assessed a recordation tax of $75,-

000. ESC paid the tax under written protest.

In the proceeding below, ESC sought a refund of the recordation tax on the grounds that 11 U.S.C. Sec. 1146(c) exempts the Purchase Money Deed of Trust from recordation tax.[1] The Bankruptcy Court held that "a purchase money deed of trust executed contemporaneously with the sale pursuant to a confirmed Chapter 11 plan of reorganization enjoys the same exemption from taxations that the deed does pursuant to 11 U.S.C. Sec. 1146(c)." (Trial transcript, at 20).

## SECTION 1146(c)

█ This appeal involves the proper interpretation of 11 U.S.C. Sec. 1146(c) which states:

> The issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

Appellant claims that the Bankruptcy Court erred in finding that 11 U.S.C. Sec. 1146(c) applied to a deed of trust given to a third-party lender by the purchaser of the debtor's real property. This Court disagrees and, therefore, affirms the ruling of the Bankruptcy Court.

Appellant contends that exempting the purchaser's tax on the Purchase Money Deed of Trust does not afford Eastmet, the Debtor, any tax relief. However, this fact does not render Sec. 1146(c) inapplicable to the Deed of Trust. As Appellant concedes, the tax exemption applies to instruments of transfer regardless of whether the tax is payable by the debtor or the purchaser. *See In re CCA Partnership*, 72 B.R. 765 (Bankr.D.Del.1987). The purpose of Sec. 1146(c) is to "facilitate reorganization" and maximize the opportunity of a debtor to reorganize. (Trial Transcript, at 19); *In re Jacoby–Bender, Inc.*, 758 F.2d 840, 841 (2d Cir.1985). Appellant argues that it is "speculative" whether a tax on the Deed of

Trust would be a burden on the Debtor. This Court disagrees. In the case of *In re Cantrup*, 53 B.R. 104 (Bankr.D.Colo.1985), the court stated that "the price achieved by an estate's sale to a purchaser can be greatly affected by whether a substantial transfer tax will be imposed or not." In fact, the tax burden to the buyer may be so great that the transaction will not occur. *See In re CCA Partnership*, 70 B.R. 696, 698 (Bankr.D.Del.1987). In the case at hand, a tax on ESC's Deed of Trust will increase the cost of the transaction by $75,000. This additional expense could jeopardize the debtor's opportunity to reorganize.

█ As the Second Circuit recognized in *Jacoby–Bender*, where an instrument of transfer is necessary for the consummation of a court-confirmed plan, the transfer is "under a plan" within the meaning of Sec. 1146(c). *Jacoby–Bender*, 758 F.2d at 842; *see also, In re Smoss Enterprises Corp.*, 54 B.R. 950, 951 (D.C.1985). ESC's loan from Pittsburgh National Bank and BT Commercial Corporation was essential to, and recognized under, the court confirmed reorganization plan. Therefore, ESC's loan was within the court-confirmed plan and is exempt from taxation under Sec. 1146(c).

Appellant cites *In re CCA Partnership*, 72 B.R. 765, 766 (Bankr.D.Del.1987) which states: "grants of tax exemption should generally be strictly interpreted in favor of the taxing power and against the taxpayer". (Appellant's Brief, at 7). However, this incomplete and misleading quote is a paraphrase from *In re CCA Partnership*, 70 B.R. 696, 698 (Bankr.D.Del.1987), *aff'd* 72 B.R. 765 (Bankr.D.Del.1987), which enunciates that:

> as a general rule grants of tax exemptions are given a strict interpretation against the assertions of the taxpayer and in favor of the taxing power *but it is equally true that such interpretation may not be so literal and narrow as to defeat the exemption's purpose ... Moreover, ... a remedial statute such*

1. ESC also argued that a purchase money deed of trust is exempt from recordation tax under Maryland Tax Property Code Sec. 12–108(i). The Bankruptcy Court declined to decide this issue, holding that the U.S. Bankruptcy Code is paramount law in this case. This Court agrees and limits this opinion specifically to Sec. 1146(c).

*as the bankruptcy law should be liberally construed* (citing 3 Sutherland, *Statutory Construction,* Secs. 60.01, 60.-02, 66.09 (4th ed.1974)) (emphasis added).

In contending that ESC owes $75,000 in taxes on the Purchase Money Deed of Trust, Appellant interprets Sec. 1146(c) too narrowly and thus impedes the purpose of the code. For the reasons discussed, this Court affirms the opinion of the Bankruptcy Court.